USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/6/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
JIAN YING LIN, HUI QIU CHEN, and XIN HE,
*on behalf of themselves and others similarly situated*,

                                Plaintiffs,

             -against-

SHANGHAI CITY CORP d/b/a Joe's Shanghai;
SHANGHAI DUPLICATE CORP d/b/a Joe's
Shanghai; KIU SANG SI a/k/a Joseph Si; TUN
YEE LAM a/k/a Peter Lam; SOLOMON C LIOU;
MIMI SI; WILLIAM KO; LILLIAN LIOU;
CHENG KUENG LIU; YUN CAI; and JOHN
ZHANG;

                                Defendants.
------------------------------------------------------------- X

18-CV-1715 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiffs, three kitchen workers formerly employed at a pair of Manhattan Chinese restaurants both operating under the name "Joe's Shanghai," bring this action on behalf of themselves and others similarly situated against the corporate and individual owner-operators of those restaurants (collectively, "Defendants").[1] Plaintiffs allege that Defendants' wage-and-hour practices and policies violated the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the New York General Business Law ("NYGBL"), and 26 U.S.C. § 7434, a federal statute permitting civil suits for the filing of fraudulent tax returns. Nominally before the Court is Plaintiffs' motion for conditional certification as a collective under 29 U.S.C. § 216(b).

---

[1] Earlier in the proceedings, Plaintiffs voluntarily dismissed their claims against several defendants associated with a third restaurant in Flushing, Queens, also operating under the name "Joe's Shanghai." *See* Dkt. 39. Thus, only parties associated with the two Joe's Shanghai restaurants in Manhattan remain Defendants here. For reasons that will become clear, however, Plaintiffs' inclusion of the "Flushing Defendants" in this lawsuit is significant to today's disposition.

That motion, for reasons discussed more fully below, triggered in response what is best viewed as a cross-motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), although it was not denominated as such. On October 26, 2018, the Court informed the parties [*see* Dkt. 60] that it intended to treat Defendants' response as a cross-motion for summary judgment as to the named Plaintiffs and invited additional submissions. *See* Fed. R. Civ. P. 12(d). No additional material was submitted.

This action is the *third* Plaintiffs have filed against Defendants arising from the same operative facts. In their opposition to Plaintiffs' motion for conditional collective certification, Defendants argue that Plaintiffs' voluntary dismissal of their second lawsuit against Defendants, after having voluntarily dismissed their first, constituted an "adjudication on the merits" under Fed. R. Civ. Proc. 41(a)(1)(B). Defs'. Mem. in Opp'n to Pls'. Mot. for Conditional Certification [Dkt. 57] at 19. If Defendants are right, then under the so-called "two dismissal" rule, Plaintiffs' present lawsuit is barred by res judicata. For the reasons that follow, the Court agrees with Defendants on this point and accordingly grants summary judgment to them as to named Plaintiffs Lin, Chen and He. To the extent Reyes Perez Guerrero, Clara Flores, and Gloria Perez Mendez can be viewed as having filed a Complaint by "opting in" to this action, *see* Notices of Consent to Join FLSA Collective Action [Dkts. 42-44], their Complaint is dismissed without prejudice to their commencing their own action against Defendants, collective or otherwise, if they so choose. Plaintiffs' motion for conditional collective certification, and their requests therein for equitable tolling and for an order directing Defendants to produce employee contact information, are denied as moot.

## BACKGROUND

As the parties dispute whether the three New York City restaurants operating under the name "Joe's Shanghai" are commonly owned or centrally controlled, the Court will refrain from

making any judgment as to the precise factual or legal relationships among Defendants and will instead generally refer to them as "owner-operators" of, or as being otherwise "associated" with, the three Joe's Shanghai restaurants. For the same reason, this order identifies each of the identically-named restaurants according to its location—i.e., Flushing, Midtown, or Chinatown.

Defendants have been the subject of no fewer than four wage and hour lawsuits filed over the last two years, three of them by Plaintiffs and all four involving Plaintiffs' counsel. As the twists and turns of these other lawsuits determine the fate of this one, the Court provides a brief chronological description of these other actions.

*The First Eastern District Action.* In October 2016, Jianmin Jin and Chunyou Xie, two former members of the kitchen staff at the Joe's Shanghai restaurant in Flushing, brought a collective action alleging FLSA and NYLL violations by a group of corporate and individual defendants associated with the three Joe's Shanghai restaurants. Many of the defendants in that suit are also Defendants in this suit. *Compare* Compl. [Dkt. 1], *with* Compl., *Jin v. Shanghai Original, Inc.*, No. 16-cv-5633 (E.D.N.Y. Oct. 7, 2016) (hereafter "EDNY I Dkt."), ECF No. 1. And although Jin and Xie's complaint alleged wage-and-hour violations specific to Jin and Xie, the causes of action asserted—for violations of the FLSA, NYLL, NYGBL, and 26 U.S.C. § 7434—are largely identical to those Plaintiffs assert here. *Compare* Compl. [Dkt. 1] ¶¶ 182-237, *with* Compl. ¶¶ 73-123, EDNY I Dkt. 1.

Important for our purposes, in August 2017, Jian Ying Lin, Hui Qiu Chen, and Xin He— the named Plaintiffs in this case—filed notices of consent to join Jin and Xie's putative collective action in the Eastern District. *See* EDNY I Dkts. 57, 60, 76.[2] Around the same time,

---

[2] Curiously, He's notice of consent to join the first Eastern District action appears to be absent from that Court's docket. Because the Eastern District Judge and parties made frequent reference to He as an opt-in plaintiff, however, this Court is satisfied that He in fact opted-in to the first Eastern District action as a plaintiff.

however, the Eastern District granted conditional collective certification to employees of the Joe's Shanghai restaurants in Flushing and Midtown but denied certification to employees of the Joe's Shanghai restaurant in Chinatown. *See* EDNY I Dkts. 45, 53, 62, 71, 76. The Court also denied the plaintiffs' motion for leave to amend their complaint to add Lin, Chen, and He as named co-plaintiffs. *See* EDNY I Dkts. 64, 76.

*The New York State Action.* Shortly after the Eastern District denied conditional collective certification to employees of the Chinatown restaurant and denied leave to amend the Eastern District complaint, Plaintiffs Lin, Chen, and He filed suit in the New York Supreme Court for New York County. *See* Dkt. 57 ex. 2 (state-court complaint). Making factual allegations virtually identical to those they make in the present action, Lin, Chen, and He's state-court complaint asserted claims for a variety of alleged NYLL and NYGBL violations—exactly the same NYLL and NYGBL claims they bring in this case. *Compare* Dkt. 57 ex. 2 ¶¶ 180-220, *with* Compl. [Dkt. 1] ¶¶ 182-237. And the complaint named as defendants a host of corporate and individual owner-operators of the three Joe's Shanghai restaurants—exactly the same defendants they have sued in this case. *Compare* Dkt. 57 ex. 2 at 1, *with* Compl. [Dkt. 1] 1. But on February 9, 2018, only a few months after filing the state-court lawsuit, Lin, Chen, and He voluntarily dismissed the entire action with prejudice. *See* Dkt. 57 ex. 3.

*The Second Eastern District Action.* The same day they voluntarily dismissed their state-court action, Lin, Chen, and He filed a virtually identical action in the Eastern District of New York. *See* Dkt. 57 ex. 4 (second EDNY complaint; hereafter "EDNY II"). This second Eastern District action reproduced the factual allegations from the state-court lawsuit almost word-for-word and brought exactly the same NYLL and NYGBL counts against exactly the same defendants. *Compare* Dkt. 57 ex. 4 (EDNY II) ¶¶ 69-171, 182-237, *with* Dkt. 57 ex. 2 (state-court complaint) ¶¶ 69-171, 180-220. The only substantive difference between Lin, Chen, and

4

He's new Eastern District complaint and their dismissed state-court complaint was the addition of two FLSA causes of action and a claim under 26 U.S.C. § 7434 (the fraudulent-tax-return statute)—as it happens, the exact same federal causes of action Lin, Chen, and He now pursue in this Court. *Compare* Dkt. 57 ex. 4 (EDNY II) ¶¶ 182-237, *with* Dkt. 57 ex. 2 (state-court complaint) ¶¶ 180-220, *and* Compl. [Dkt. 1] ¶¶ 182-237. For reasons not discernible from the record, however, Lin, Chen, and He voluntarily dismissed their Eastern District action—their second lawsuit against Defendants—under Fed. R. Civ. P. 41(a)(1)(A)(i), this time just days after having filed it. *See* Dkt. 57 ex. 5.

*The Southern District Action.* A few days after voluntarily dismissing their Eastern District action, Lin, Chen, and He filed this lawsuit—virtually a word-for-word reproduction of the Eastern District Complaint that they had just dismissed. *See* Compl. [Dkt. 1]. Besides alleging the same operative facts as those alleged in their voluntarily dismissed state-court and Eastern District actions, this Complaint includes the same claims (under the FLSA, NYLL, NYGBL, and 26 U.S.C. § 7434) as their Eastern District lawsuit. *Compare* Compl. [Dkt. 1] ¶¶ 69-171, 182-237, *with* Dkt. 57 ex. 4 (EDNY II) ¶¶ 69-171, 182-237, *and* Dkt. 57 ex. 2 (state-court complaint) ¶¶ 69-171, 180-220. It names as Defendants exactly the same parties they sued in state court and the Eastern District. (The Court will discuss Plaintiffs' specific factual allegations in more detail below.)

## DISCUSSION

Federal Rule of Civil Procedure 41(a)(1)(A)(i) permits a plaintiff voluntarily to dismiss an action without a court order by filing a notice of dismissal before an opposing party answers or moves for summary judgment. Unless the plaintiff's notice states otherwise, the voluntary dismissal is without prejudice. Fed. R. Civ. P. 41(a)(1)(B). But a notice of voluntary dismissal "operates as an adjudication on the merits"—and may therefore trigger res judicata—if "the

5

plaintiff previously dismissed any federal- or state-court action based on or including the same claim." *Id.* This principle is often referred to as the "two dismissal rule," *see, e.g.*, *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1016 (2d Cir. 1976), and exists primarily "to prevent delays and harassment caused by plaintiffs securing numerous dismissals without prejudice," 9 Charles Alan Wright et al., Federal Practice & Procedure § 2368 (3d ed. 1998).

The two-dismissal rule bars this action. Plaintiffs' state-court and Eastern District actions were against the same Defendants and arose from the same operative facts. There is no dispute that Plaintiffs dismissed both actions voluntarily: Plaintiffs discontinued their state-court action by notice rather than by stipulation or court order—a New York procedure equivalent to a Rule 41(a)(1)(A)(i) voluntary dismissal, *see* N.Y. C.P.L.R. § 3217(a)(1)—and then dismissed their Eastern District action under Rule 41(a)(1)(A)(i). Under Rule 41(a)(1)(B)'s plain terms, that second dismissal constituted "an adjudication on the merits." That adjudication on the merits, in turn, "prevents the institution of another action," like this one, "based on the same claim." 9 Charles Alan Wright et al., Federal Practice & Procedure § 2368 (3d ed. 1998). That Plaintiffs' first action was filed in state court is irrelevant, *see id.*; *see also, e.g.*, *Lake at Las Vegas Inv'rs Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 725-28 (9th Cir. 1991) (applying two-dismissal rule where plaintiff's first voluntarily dismissed action was in state court and second in federal court), as is the absence of any subjective intention on Plaintiffs' part to harass or abuse Defendants by repeatedly filing and dismissing essentially the same lawsuit, *see, e.g.*, *Lake at Las Vegas*, 933 F.2d at 727. Nor does it matter that Plaintiffs labeled their Eastern District dismissal as being "without prejudice." *See* Dkt. 57 ex. 5; *see also, e.g.*, *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1076 (9th Cir. 1999) ("[I]t does not matter what label

the plaintiff attaches to a second voluntary dismissal. Rather, Rule 41 itself prescribes the effect of Rule 41(a)(1) dismissals.").

Pointing out that their state-court complaint lacked the federal causes of action they asserted in the Eastern District and reassert here, Plaintiffs argue that their "FLSA claims have not been dismissed twice" and "should be permitted to go forward." Pls'. Reply in Supp. Mot. for Conditional Certification [Dkt. 58] at 4. But they cite no authority for the notion that the two-dismissal rule applies only where a plaintiff's second and third actions assert precisely the same causes of action as the plaintiff's first. Such a principle would be inconsistent with Rule 41(a)(1)(B)'s instruction that the voluntary dismissal of a second action shall be with prejudice so long as the plaintiff's prior action was "based on *or include[ed]* the same claim" as their second—a condition undoubtedly satisfied here given that each of Plaintiffs' three lawsuits have included the very same NYLL and NYGBL claims.

The weight of authority, moreover, is against Plaintiffs' "one-to-one" conception of the two-dismissal rule: a variety of courts have recognized the two-dismissal rule to be a close cousin of the doctrine of res judicata and one that is subject to ordinary res-judicata principles. This means that a second action is "based on or includ[es] the same claim" for Rule 41(a)(1)(B) purposes whenever it arises from the same transaction or occurrence as the first.[3] This approach

---

[3] *See, e.g.*, *Rascoe v. APM Terminals Va. Inc.*, No. 2:12cv352, 2013 WL 1332134, at *3-4 (E.D. Va. Mar. 29, 2013) ("Because a notice of a second dismissal by the plaintiff serves as an 'adjudication on the merits,' the doctrine of res judicata applies. . . . [T]he appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." (internal quotation marks omitted) (quoting *Manning v. S.C. Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 47 (4th Cir. 1990), and *Meekins v. United Transp. Union*, 946 F.2d 1054, 1058 (4th Cir. 1991))); *Melamed v. Blue Cross of Cal.*, No. CV-11-4540-PSG, 2012 WL 122828, at *4-7 (C.D. Cal. Jan. 13, 2012) ("[T]he Ninth Circuit has analogized the 'two dismissal' rule to the res judicata inquiry. . . . The relevant inquiry is not whether the claims identified in the various complaints match up exactly, but whether the two suits arise from the same transactional nucleus of facts such that the claims pleaded are all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties." (internal quotation marks omitted) (citing *Durney v. Magna Int'l, Inc.*, No. C-11-00361-MHP, 2011 WL 1659880, at *2 (N.D. Cal. May 3, 2011), and *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001))); *Durney*, 2011 WL 1659880, at *2-4 ("Although neither the Supreme Court nor the Ninth Circuit has specifically addressed the meaning of 'same claims' for the purposes of Rule 41(a)(1)(B), the Ninth Circuit has

7

to the "same claim" inquiry makes practical sense: Rule 41(a)(1)(B)'s two-dismissal rule would be toothless if a plaintiff could evade it merely by adding to his original, voluntarily dismissed complaint a new cause of action arising from the same operative facts—say, for example, an FLSA claim springing from the same alleged misconduct as a previously pleaded but voluntarily dismissed NYLL claim. That is, of course, precisely what Plaintiffs have attempted to do here.

The Second Circuit has not yet spoken on this issue. In the absence of controlling precedent, this Court adopts the "same transaction or occurrence" approach to determining whether a plaintiff's second action was "based on or includ[ed] the same claim" as a plaintiff's first such that the second action's voluntary dismissal "operates as an adjudication on the merits" with preclusive effect against further lawsuits.

Applying that approach here, the Court is satisfied that Plaintiffs' Eastern District action was "based on or includ[ed] the same claim" as Plaintiffs' New York state action, even though the former included federal causes of action not pleaded in the latter. A careful examination of Plaintiffs' complaints in their Eastern District and state-court actions reveals that both arose from *precisely* "the same transactional nucleus of facts." *Melamed*, 2012 WL 122828, at *5 (internal quotation marks omitted) (quoting *Owens*, 244 F.3d at 714). In both actions, Plaintiff Lin alleged that she was employed at various times as a "sorter and miscellaneous worker" at the Chinatown and Midtown Joe's Shanghai restaurants; that throughout those periods, she worked eleven-hour days five and often six days a week; that she was often denied rest breaks; that she was paid a flat monthly salary in semi-monthly installments, often in cash; and that she was denied overtime pay. *See* Dkt. 57 ex. 2 (state-court complaint) ¶¶ 69-90; *see also* Dkt. 57 ex. 4

---

analogized the Rule 41(a)(1)(B) two dismissal rule to the res judicata inquiry.") (citing *Commercial Space*, 193 F.3d at 1080, and *Lake at Las Vegas*, 933 F.3d at 728), *aff'd in part, vacated in part on other grounds*, 479 Fed. App'x 113 (9th Cir. 2012); *see also Jung v. Deutsche Bank Nat'l Tr. Co.*, C.A. No. 17-295WES, 2017 WL 7792573, at *1-2 (D.R.I. Sept. 26, 2017) (applying *Melamed* and *Rascoe*'s "same transactional nucleus of facts" approach).

8

(EDNY II) ¶¶ 69-90. In both actions, Plaintiff Chen alleged that she was employed at various times as a "miscellaneous kitchen worker, kitchen packer and sorter" at the Chinatown and Midtown Joe's Shanghai restaurants; that throughout those periods, she sometimes worked eleven-hour days six days a week; that she was paid a flat monthly salary in both cash and check, often without accompanying wage statements; that when she did receive wage statements, they underreported her hours worked; that meal credits were (presumably wrongfully) deducted from her salary; and that she was denied overtime pay. *See* Dkt. 57 ex. 2 (state-court complaint) ¶¶ 91-125; *see also* Dkt. 57 ex. 4 (EDNY II) ¶¶ 91-125. And in both actions, Plaintiff He alleged that he was employed at various times as a chef at the Flushing, Chinatown, and Midtown Joe's Shanghai restaurants; that throughout those periods, he often worked eleven-and-a-half-hour days five days a week; that he was often denied rest breaks; that he was paid a flat monthly salary in both cash and check, often without accompanying wage statements; that when he did receive wage statements, they underreported his hours worked; that meal credits were (presumably wrongfully) deducted from his salary; and that he was denied overtime pay. *See* Dkt. 57 ex. 2 (state-court complaint) ¶¶ 126-71; *see also* Dkt. 57 ex. 4 (EDNY II) ¶¶ 126-71. Plaintiffs have reproduced those factual allegations virtually word-for-word in this action. *See* Compl. [Dkt. 1] ¶¶ 69-171. Because Plaintiffs' Eastern District action arose from the same nucleus of operative facts as their state-court action and all claims raised in the Eastern District were or could have been raised in state court, Plaintiffs' Eastern District action was "based on or includ[ed] the same claim" as their state-court action for Rule 41(a)(1)(B) purposes. Accordingly, the voluntary dismissal of the Eastern District action "operate[d] as an adjudication on the merits" that precluded further lawsuits, like this one, based on that same nucleus of facts.[4]

---

[4] Curiously, Defendants do *not* argue that Plaintiffs' Eastern District action was itself partially barred because Plaintiffs voluntarily dismissed their state-court action "with prejudice." *See* Dkt. 57 ex. 3. The Court

In importing res-judicata principles into the two-dismissal inquiry, the Court is mindful of the Second Circuit's admonition that "a court should be most careful not to construe or apply the [two-dismissal rule] too broadly," lest it too harshly "close the courthouse door to an otherwise proper litigant." *Poloron Products*, 534 F.2d at 1017. But where, as here, crafting an exception to Rule 41(a)(1)(B) would permit mischievous plaintiffs to achieve numerous dismissals without prejudice—precisely the evil the two-dismissal rule was designed to prevent—the Court must adhere to the text of Rule 41(a)(1)(B), even if the result may be harsh. *Cf., e.g.*, *Lake at Las Vegas*, 933 F.2d at 727 (refusing to inquire into intent behind plaintiff's voluntary dismissal when doing so would "read out" of Rule 41(a)(1)(B) "dismissals which fall *squarely within the language of the Rule*").

That said, the Court disagrees with Plaintiffs that applying the two-dismissal rule in this case works an unduly harsh or unjust result. Plaintiffs had ways of getting into this Court other than by twice voluntarily dismissing and then refiling what was essentially the same lawsuit. Rather than dismiss their state-court action by notice, for instance, plaintiffs could have sought Defendants' consent to a stipulation of dismissal, *see* N.Y. C.P.L.R. § 3217(a)(2), which would have avoided the two-dismissal rule's application altogether, *see, e.g.*, *Poloron Products*, 534 F.2d at 1017-18 ("[W]e hold that the filing of a notice of dismissal preceded by a stipulation knowingly consented to by all parties does not activate the 'two dismissal' bar against bringing an action based on or including the same claim."). They also could simply have amended their state-court complaint to add their federal causes of action, which (presumably) would have obviated any need to dismiss and refile in federal court. *See* 29 U.S.C. § 216(b) ("An [FLSA]

---

elects not to engage with that issue. The Court lacks the benefit of briefing on the topic, for one thing. And because the two-dismissal rule bars this action altogether, the preclusive effect of Plaintiffs' state-court dismissal—which would extend only to the state-law claims they brought in the state-court action—is academic.

action . . . may be maintained . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."); *see also* 26 U.S.C. § 7434 (including no prohibition on bringing civil actions in state court). Or, if Plaintiffs were in fact concerned with being able to pursue in the Southern District "collective claims against the Chinatown defendants that they were prevented from pursuing in the Eastern District Action I," Pls'. Mem. in Supp. Mot. for Conditional Certification [Dkt. 52] at 17-18, they could have sought a transfer of their Eastern District action to this Court, a procedure that would not have required dismissal, *see* 28 U.S.C. § 1404(a). In any case, given the bizarre path back and forth across the Brooklyn Bridge that Plaintiffs chose to get here, the Court is not especially concerned that a straightforward application of the two-dismissal rule here would run afoul of the "equitable principles" Plaintiffs now invoke.[5] Pls'. Mem. in Supp. Mot. for Conditional Certification [Dkt. 52] at 18.

Plaintiffs argue that disposing of this action under the two-dismissal rule is not consistent with *District Attorney of New York County v. Republic of the Philippines*, 307 F. Supp. 3d 171, 197-99 (S.D.N.Y. 2018). There, the Court held that Rule 41(a)(1)(B) did not bar a suit by the Republic of the Philippines to recover property allegedly misappropriated by that country's former president and his wife. The Philippines had already brought and voluntarily dismissed three other actions to recover allegedly misappropriated property, but because each of those prior suits sought recovery of *different* property, the Court held that none of them was "based on or include[ed] the same claim" as the Philippines' latest lawsuit. 307 F. Supp. 3d at 197 (quoting Fed. R. Civ. P. 41(a)(1)(B)). The voluntary dismissal of those prior actions, therefore, did not trigger the two-dismissal rule. *Id.* at 198. The Court's approach in that case is fully compatible

---

[5] The Court also notes that Plaintiffs remain free to proceed, and to recover, as opt-in members of the Flushing-employee class in Jin and Xie's still-pending action in the Eastern District.

with the "same transaction or occurrence" approach this Court adopts today. Although the Philippines' prior suits all "involved claims of misappropriation of public property," *id.*, each of those actions—unlike Plaintiffs' cut-and-pasted wage-and-hour claims here—arose from a *different* alleged misappropriation of a *different* piece of property.

In their reply brief in support of their motion for conditional collective certification, Plaintiffs suggest, without any citation to authority, that this action cannot be dismissed because "it now includes plaintiffs, namely Reyes Perez Guerrero, Clara Flores, and Gloria Perez Mendez, who did not participate in and thus were not dismissed from either the state action or [Plaintiffs'] Eastern District[ ] action." Pls'. Reply in Supp. Mot. for Conditional Certification [Dkt. 58] at 4; *see also* Notices of Consent to Join FLSA Collective Action [Dkts. 42-44]. Although the lack of any collective certification by this Court in no way barred Mendez, Flores, and Guerrero from attempting to join Lin, Chen, and He's collective action as soon as it was filed, *see Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 & n.10 (2d Cir. 2010) ("[N]othing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the [collective] notice . . . has not been sent, so long as the plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action."), the Court rejects the assertion that their doing so can, like the water at Lourdes, miraculously wash away the res-judicata effect of Plaintiffs' prior two dismissals. This holding may appear counterintuitive given the traditional expectation that res judicata requires identity of parties between actions. *See, e.g.*, *Meekins*, 946 F.2d at 1057. But a contrary rule would permit an end-run around the two-dismissal rule in collective actions like this one: a plaintiff could revive a lawsuit otherwise dead under the rule merely by persuading a new, similarly situated individual to opt into the suit before it is dismissed on res-judicata grounds. Nor is permitting such end-runs practically necessary to prevent injustice to plaintiffs like Mendez, Flores, and Guerrero, who have the

misfortune of opting into a collective action that is forestalled under the two-dismissal rule: even if the action such plaintiffs joined was precluded at its inception by Rule 41(a)(1)(B), they nonetheless remain free to file their own action (or actions), collective or otherwise, free of the two-dismissal defect that bars the named plaintiffs'.

There remains one final procedural thread to be tied up. It is atypical for a grant of summary judgment to spring from a party's motion for conditional collective certification. But no matter how the parties have chosen to label this motion, both sides have devoted significant attention in their briefing to the question whether Rule 41(a)(1)(B) requires full or partial disposition of this action in Defendants' favor as a matter of law. Indeed, as the pre-motion correspondence between the parties and the Court reflects, the parties were well aware that the briefing on Plaintiffs' certification motion was to simultaneously address the Rule 41(a)(1)(B) issue, *see* Endorsed Mem. [Dkt. 41], and Plaintiffs preemptively addressed the issue in their brief in support of their certification motion, *see* Pls'. Mem. in Supp. Mot. for Conditional Certification [Dkt. 52] at 16-18. Nevertheless, in an abundance of caution, the Court informed the parties on October 26, 2018, that it intended to treat Defendants' response to Plaintiffs' motion for conditional collective certification as a cross-motion for summary judgment as to Plaintiffs Lin, Chen, and He and as a motion to dismiss without prejudice as to opt-in parties Mendez, Flores, and Guerrero. *See* Dkt. 60. The Court also invited the parties to submit any additional information they deemed appropriate on the Rule 41(a)(1)(B) issue. *Id.*; *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Neither party made any submissions in response to that order.

13

Given the course of proceedings in this case and the ample opportunity each side has had to comment and submit evidence on the Rule 41(a)(1)(B) question, the Court is comfortable treating Defendants' opposition to Plaintiffs' motion for conditional collective certification (1) with respect to named Plaintiffs Lin, Chen, and He, as a cross-motion for summary judgment on the Rule 41(a)(1)(B) issue only, and (2) with respect to opt-in parties Mendez, Flores, and Guerrero, as a motion to dismiss without prejudice on the Rule 41(a)(1)(B) issue only. There being no dispute of fact bearing on that topic—the pleadings and documents discussed above are all judicially noticeable, *see, e.g.*, *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006), and Plaintiffs do not quibble with the procedural history these materials disclose—the Court is also comfortable holding that Rule 41(a)(1)(B) bars the named Plaintiffs' action and that Defendants are therefore entitled to judgment as a matter of law.

While that is what the law requires as to the claims of named Plaintiffs Lin, Chen, and He, the three opt-in plaintiffs stand in a different position. On the one hand, they have not previously sued any of Defendants and therefore should not be subject to the strictures of Rule 41(a)(1)(B). On the other hand, it would be inappropriate to leave them as parties to this action, which was initiated by other people willing to serve as named Plaintiffs in a collective action but whose claims have now been extinguished. It is not at all clear that Guerrero, Flores and Mendez would be suitable representatives of a collective or that they want to serve in that role. Accordingly, this lawsuit is dismissed without prejudice as to Guerrero, Flores and Mendez.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional class certification is DENIED AS MOOT. Summary judgment is GRANTED to Defendants on all claims asserted by Lin, Chen and He. All claims by opt-in plaintiffs Guerrero, Flores, and Mendez are

DISMISSED WITHOUT PREJUDICE.  The Clerk of Court is respectfully directed to terminate all open motions and close the case.

**SO ORDERED.**

**Date:   November 5, 2018**　　　　　　　　　　　　　　　　**VALERIE CAPRONI**
　　　　　**New York, New York**　　　　　　　　　　　　　**United States District Judge**